UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ANDREW S.,<br><br>          Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Acting Commissioner of Social Security,<br><br>          Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 1:20-cv-00015-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Andrew S.[1] filed this action asking the court to remand the Acting Commissioner of Social Security's ("Commissioner") decision denying his claim for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (*See* Pl.'s Opening Br. 1–2, Doc. No. 16.)  The Administrative Law Judge ("ALJ") determined Mr. S. did not qualify as disabled.  (Certified Tr. of Admin. R. (hereafter "Tr. __") 28, Doc. No. 8.)  After careful review of the entire record and the parties' briefs,[2] the court[3] AFFIRMS the Commissioner's decision.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court will refer to the Plaintiff by his first name and last initial only.

[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

[3] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Doc. No. 13.)

**STANDARD OF REVIEW**

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial

review of a final decision of the Commissioner of the Social Security Administration.  This court

reviews the ALJ's decision to determine whether the record contains substantial evidence in

support of the ALJ's factual findings and whether the ALJ applied the correct legal standards.

42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Although the court

considers "whether the ALJ followed the specific rules of law that must be followed in weighing

particular types of evidence in disability cases," the court "will not reweigh the evidence or

substitute [its] judgment for the Commissioner's."  *Lax*, 489 F.3d at 1084 (internal quotation

marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence.  42 U.S.C.

§ 405(g).  The substantial evidence standard "requires more than a scintilla, but less than a

preponderance."  *Lax*, 489 F.3d at 1084.  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Langley v. Barnhart*, 373

F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir.

2003)).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence

or if there is a mere scintilla of evidence supporting it."  *Id.* (internal quotation marks omitted).

Rather than mechanically accepting the ALJ's findings, the court will "examine the record as a

whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision

and, on that basis, determine if the substantiality of the evidence test has been met."  *Glenn v.*

*Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Sec'y of Health & Human Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991)).  "The possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's findings from being

2

supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  Moreover, the court may not substitute its judgment for that of the ALJ.  *Langley*, 373 F.3d at 1118.

In addition, the court reviews whether the ALJ applied the correct legal standards.  The court may reverse where the ALJ fails to do so.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) ("[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis.").  Sufficient grounds for reversal also arise where the ALJ fails "to provide this court with a sufficient basis to determine that appropriate legal principals have been followed." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (internal quotation marks omitted).

## APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-part sequential evaluation.  The analysis requires the ALJ to consider whether:

3

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a medically severe physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the

relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform his or her past work;

and

5) The claimant possesses a residual functional capacity to perform other work in the

national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v.

Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four

steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step

five, the burden shifts to the Commissioner to show the claimant retains the ability to perform

other work existing in the national economy.  *Id.*

## PROCEDURAL HISTORY

Mr. S. applied for supplemental security income (SSI) in February of 2014 and child

disability benefits in April of 2014, alleging disability beginning August 1, 2009.  (Tr. 283–98.)

After an administrative hearing on February 23, 2017, (Tr. 36–63), the ALJ issued a partially

favorable decision on May 17, 2017, (Tr. 139–161).  The ALJ approved Mr. S.'s claim for SSI

under Title XVI beginning March 10, 2017, but denied his claim for SSI before this date and

denied his claim for child disability benefits under Title II.  (Tr. 154.)

At step two of the sequential evaluation, the ALJ found Mr. S. had the severe

impairments of Charcot-Marie-Tooth disease (CMT) and Hereditary Neuropathy and Liability to

Pressure Palsies (HNPP) since the alleged onset date of August 1, 2009.  (Tr. 147.)  The ALJ

also found that, beginning March 10, 2017, Mr. S. had additional severe impairments of bilateral

carpal tunnel syndrome, degenerative disc disease of the lumbar spine, and obesity.  (Tr. 147.)

The ALJ found Mr. S.'s impairments did not meet or equal any listings at step three.  (Tr. 147–

48.)  At step four, the ALJ found Mr. S. had the residual functional capacity (RFC) before March

10, 2017, to perform sedentary work with certain exceptions and had the capacity to "frequently

handle, finger, and feel bilaterally."  (Tr. 148, 150.)  Beginning March 10, 2017, the ALJ found

Mr. S. had the same RFC except he could only "occasionally handle, finger, and feel bilaterally."

(Tr. 152.)  At step five, the ALJ determined Mr. S. could perform jobs in the national economy

before March 10, 2017, but no jobs existed in significant numbers which he could perform after

this date.  (Tr. 153–154.)  Therefore, the ALJ found Mr. S. was disabled beginning on March 10,

2017.  (Tr. 154.)

   Mr. S. appealed the ALJ's decision to the Appeals Council, (Tr. 213–220), which issued

an order of remand, (Tr. 162–167).  As relevant here, the Appeals Council concluded the ALJ's

finding of disability beginning March 10, 2017 based a change in Mr. S.'s manipulative abilities

was not supported by substantial evidence.[4]  (Tr. 164.)  The Appeals Council noted that although

the record documented an increase in subjective complaints on this date, the examination report

did not document any decrease in functional abilities and was "nearly identical to those

conducted prior to March 10, 2017."  (Tr. 164.)  Accordingly, the Appeals Council remanded for

a new hearing with instructions to "[g]ive further consideration to the claimant's maximum

---

[4] The Appeals Council also found the ALJ failed to adequately evaluate (1) opinion evidence
from one of Mr. S.'s treating physicians, and (2) the severity of Mr. S.'s mental impairments.
(Tr. 165.)  Mr. S. does not raise these issues in his appeal to this court; therefore, this order does
not address them.

residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations." (Tr. 165.)

Following a second administrative hearing on August 30, 2018, (Tr. 64–80), the ALJ issued a fully unfavorable decision on December 18, 2018, denying both Title II and Title XVI benefits, (Tr. 9–35). This time, the ALJ found no change in Mr. S.'s condition in March of 2017. At step two, the ALJ found Mr. S. had the severe impairments of CMT, HNPP, bilateral carpal tunnel syndrome, degenerative disc disease of the lumbar spine, and obesity for the entire period at issue. (Tr. 15.) At step four, the ALJ found Mr. S. had the RFC to perform sedentary work with certain exceptions and could "frequently handle, finger, and feel bilaterally," with no change in March of 2017. (Tr. 19.) At step five, the ALJ found Mr. S. could perform jobs in the national economy and, therefore, was not disabled for any portion of the time period at issue. (Tr. 27–28.) Mr. S. appealed the decision to the Appeals Council, (Tr. 276–82), which denied review, (Tr. 1–6).

## ANALYSIS

Mr. S.'s sole contention on appeal is that the ALJ erred in finding he was able to use his hands on a "frequent" basis after March 10, 2017. (Pl.'s Opening Br. 5, Doc. No. 16.) Mr. S. argues the record contains "significant evidence" supporting the ALJ's initial determination that he was able to use his hands only occasionally beginning on this date. (*Id.*) He asserts the ALJ's contrary finding in the second decision is not supported by substantial evidence. (*Id.* at 7.)

When a case is remanded by the Appeals Council, the ALJ must "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). The ALJ may reach different substantive conclusions about the evidence on remand and is not bound to her earlier decision.

*Campbell v. Bowen*, 822 F.2d 1518, 1521–22 (10th Cir. 1987) (finding an ALJ did not err in changing the RFC finding from sedentary work to light work on remand); *see also Miller v. Barnhart*, 175 F. App'x 952, 955–56 (10th Cir. 2006) (unpublished) ("Preclusion principles . . . do not bind the ALJ to his earlier decision."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) ("It was certainly within the ALJ's province, upon reexamining [the claimant's] record, to revise his RFC category."). "To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate." *Campbell*, 822 F.2d at 1522.

Here, the Appeals Council concluded the ALJ's finding regarding a change in manipulative abilities in March of 2017 was not supported by substantial evidence, and it remanded with instructions to reconsider Mr. S.'s RFC "during the entire period at issue." (Tr. 164–5.) The ALJ's reconsideration of Mr. S.'s RFC and manipulative abilities was consistent with—indeed, required by—the Appeal's Council's order. Thus, the court need not consider whether significant evidence supports the ALJ's initial determination, as Mr. S. argues. Instead, the only issue before this court is whether substantial evidence supports the ALJ's finding in his second decision that Mr. S. could "frequently handle, finger, and feel bilaterally" for the entire period at issue.[5]

The Social Security Administration defines "occasionally" as "occurring from very little up to one-third of the time" and "frequent" as "occurring from one-third to two-thirds of the time." Social Security Ruling (SSR) 83-10.

---

[5] Mr. S. does not appear to challenge this finding as to the time period before March 10, 2017, because he argues the ALJ "had it right the first time" in the initial decision finding reduced abilities only after this date. (Pl.'s Opening Br. 5, Doc. No. 16.) Accordingly, the court focuses on the evidence in the record from March of 2017 forward.

The ALJ considered Mr. S.'s testimony that he had experienced numbness and weakness in his hands since his teen years; he had difficulty writing for long periods of time; he was attending a computer science program at a university; and he sometimes lost function in his hands for more than a month at a time.  (Tr. 19–20; *see also* Tr. 74–76.)  The ALJ found Mr. S.'s impairments could reasonably be expected to cause the alleged symptoms; however, the "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 20.)

The ALJ noted "[r]ecords from March 2017 indicated [Mr. S.] reported that using a computer for long periods of time was hard for him as he has sensory problems in his hands after a while."  (Tr. 24; *see also* Tr. 1124.)  However, Mr. S.'s "examinations showed normal upper extremity strength throughout except in the 4th and 5th digits of the upper extremity which was only slightly (4/5) reduced."  (Tr. 24; *see also* Tr. 1119.)  The ALJ also considered an upper extremity EMG/nerve conduction study from March 21, 2017, showing "borderline to mild demyelinating changes consistent with bilateral carpal tunnel syndrome" and "decreased sensation to bilateral digits four and five and hypothenar eminence."  (Tr. 24; *see also* Tr. 1140–41.)  However, the test showed Mr. S "maintained normal upper extremity strength with [the] exception of slightly decreased (4/5) strength in his bilateral wrist extension, finger flexion and abduction, and thumb opposition."  (Tr. 24; *see also* Tr. 1140–41.)  These test results were largely consistent with results of prior testing.  Tests conducted between 2005 and 2017 at various times showed normal grip strength or slightly weakened grip strength and limited sensation, with results ranging from 4/5 to 5/5.  (Tr. 23–24; *see also* Tr. 456, 478–79, 522, 525, 528, 532, 538, 613–15, 620, 679, 872, 874, 879, 1119, 1123.)  The ALJ concluded "[e]vidence of normal to slightly decreased (4-5/5) bilateral upper extremity . . . strength [is consistent] with

8

sedentary exertion with limitations as described [in the decision]." (Tr. 26.)  Finally, the ALJ

noted Mr. S. was able to attend college courses for computer science and, although he received

some accommodations such as accessible furniture and deadline extensions, "[t]here was nothing

that would warrant greater limitations in use of the hands, such as adaptive equipment." (Tr. 24;

*see also* Tr. 1111.)

Mr. S. argues the medical opinions from treating providers between 2006 and 2017

provide "overwhelming support" for his position that he was unable to use his hands

productively on a frequent basis. (Pl.'s Opening Br. 6–7.)  Specifically, he points to:

- Dr. Lawson's 2006 notes regarding his diminished sensation (Tr. 1087–88);

- Dr. Melville's 2008 letter stating he was "unable to perform work requiring [manual] labor," including "finger dexterity with small parts" (Tr. 514);

- Dr. Johnson's March 2017 opinion that his "hands and legs are affected by HNPP which makes any kind of work that requires frequent or repetitive use of his hands and legs extremely difficult" (Tr. 1128); and

- Dr. Nelson's March 2017 letter describing testing which showed "ongoing nerve damage in his hands," and stating Mr. S.'s symptoms of "pain, numbness, and loss of fine motor control" would "be an ongoing inhibition to fulltime employment" (Tr. 1108).

The record shows the ALJ considered the opinions of each of these providers but

assigned them little weight, finding them inconsistent with the overall medical evidence in the

record and, in some instances, unsupported by the provider's own treatment notes.  (Tr. 25–26.)

The ALJ discussed each provider's opinions in his decision and explained the reasons why he

assigned them little weight, citing to contrary evidence in the record including test results

9

showing normal to slightly decreased upper extremity strength, as well as Mr. S.'s activities such as taking computer science courses without adaptive equipment.  (Tr. 25–26.)  Thus, the record demonstrates the ALJ adequately evaluated the opinions of Mr. S.'s medical providers and found them inconsistent with the other medical evidence.

Based on the evidence described above, the record contains substantial evidence to support the ALJ's finding that Mr. S. had no significant change in his abilities in March of 2017 and was able to "frequently handle, finger, and feel bilaterally" for the entire time period at issue.  Although the record also contains evidence which would support a contrary conclusion, such evidence does not overwhelm the evidence relied upon by the ALJ.  Under these circumstances, the court will not reweigh the evidence or substitute its judgment for that of the ALJ.  *See Lax*, 489 F.3d at 1084.  Because they are supported by substantial evidence, the ALJ's factual findings will not be disturbed.

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 1st day of March, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge